R. L. BENHAM, Plaintiff in Error,

v.

SELECTED INVESTMENTS CORPORA-
TION, a Corporation, Defendant
in Error.

No. 37559.

Supreme Court of Oklahoma.

July 9, 1957.

Shutler, Shutler & Baker, Kingfisher,
for plaintiff in error.

Washington, Thompson, Wheeler &
Camp, Oklahoma City, for defendant in
error.

BLACKBIRD, Justice.

This is an action brought by plaintiff, Selected Investments Corporation, a corporation, against R. L. Benham on three separate causes of action pleaded in its petition to recover a balance due on three different conditional sales contracts. These contracts were executed by defendant to William A. Johnson doing business as Johnson Motor Sales. It is alleged that in the year 1953 defendant purchased three different automobiles from Johnson, one a Ford, one a Cadillac and the other a Lincoln. These conditional sales contracts were then assigned by Johnson to plaintiff who is now the owner and holder of said contracts.

In its first cause of action plaintiff sought to recover a balance allegedly due on the conditional sales contract executed by defendant to Johnson for the purchase of the Ford automobile in the sum of $878.37, together with interest at the rate of 10 per cent until paid. In its second cause of action it sought to recover an alleged balance due in the sum of $2,957.20, with interest, on the conditional sales contract held on the Cadillac automobile purchased by defendant from Johnson. In its third cause of action it sought to recover on the conditional sales contract executed by defendant to Johnson for the purchase of the Lincoln automobile in the sum of $2,145.06, together with interest.

In his answer defendant pleaded full payment of all amounts claimed to be due plaintiff on several stated causes of action. He alleged he made some of the payments to plaintiff, but in most instances they were made to Johnson, who he alleged was plaintiff's agent for their collection.

By way of verified reply plaintiff specifically denied that Johnson, doing business as Johnson Motor Sales, was, or ever had been its agent.

During the trial of the case the court excluded certain evidence offered by defendant that he contends was competent and admissible to show that Johnson was acting as plaintiff's agent in collecting the payments he had made. The court excluded such offered evidence and, on motion of plaintiff, directed the jury to return a verdict in its favor. The jury then returned a verdict as directed for the entire amount plaintiff claimed. Judgment was entered accordingly.

In this appeal defendant relies largely for reversal of said judgment on the alleged error of the court in excluding the offered evidence.

Before passing upon this question we deem it necessary to review briefly the evidence. It is conceded that defendant purchased the automobiles in question from Johnson and executed conditional sales contracts for their purchase, and that Johnson assigned the contracts to plaintiff who is their present owner and holder.

A Mrs. Grinter testified that during all the time here involved she was employed as supervisor of plaintiff's motor sales department; that she is familiar with the transactions here involved; that plaintiff is the owner and holder of the conditional sales contracts involved, and obtained them by assignment from William A. Johnson; and that there is now due and owing plaintiff from defendant, the total claimed in the several causes of action pleaded in plaintiff's petition.

Defendant testified he bought the automobiles in question from William A. Johnson and executed and delivered to him the conditional sales contracts involved; that Johnson thereafter assigned them to plaintiff; that he knew plaintiff was the owner and holder of said contracts; that he paid in full all amounts due for the purchase of said automobiles; that in some instances he made the payments direct to plaintiff but in most instances he made them to Johnson; that he received credit on the conditional sales contract for all payments made direct to plaintiff, but did not receive credit for all those made to Johnson. Defendant further testified to a transaction had with Johnson in 1953 for the purchase of a Mercury automobile, stating that he executed a conditional sales contract to him

for its purchase, and that likewise Johnson assigned said contract to plaintiff; that he became delinquent in the payments due on said automobile and contacted Johnson for an extension of 45 days; that, as consideration for said extension, he agreed to pay the interest in advance; that Johnson, then in his presence called plaintiff's office and in his conversation with him, its employee, a Mr. Norman, agreed to the extension; and defendant then paid Johnson the agreed consideration for said extension. He thereafter received credit on the conditional sales contract for said interest payment. That defendant thereafter sold the Mercury to a dealer in Enid, who paid for same by check to plaintiff, and then gave defendant the balance of the sale price; that he (defendant) thereafter received a release of the conditional sales contract held by plaintiff on the Mercury. Defendant further testified that he also made arrangement with Johnson for an extension on the conditional sales contract held by plaintiff on the Ford automobile; that Johnson then again called Mr. Norman at plaintiff's office, and .after said conversation, Norman accepted interest in advance for the extension on this conditional contract; and that thereafter defendant received credit for this payment on said conditional sales contract. Defendant further testified that upon receipt of the conditional sales contracts for the automobiles mentioned in plaintiff's petition, he received from plaintiff a coupon book containing instructions as to the manner in which payments were to be made thereon, and, among said instructions, was the following:

"Make checks, drafts, money orders payable to the Company. Caution—We are not responsible for payments made to other than our own representatives."

Defendant further testified that he read and understood this direction but further testified that, as he understood and construed the conditional sales contracts, he had the right, as his option, to make payments either to plaintiff, or to Johnson, as its representative. Each of the conditional sales contracts contained the following provision:

"I hereby acknowledge delivery, by the undersigned seller, (Johnson Motor Sales by William A. Johnson) to me of the above described articles for which I agree to pay to him, his successors or assigns, at his office, or office of his assigns, the deferred balance under the following terms and conditions: * * *"

The evidence further shows that the blank forms of the conditional sales contracts involved were printed and furnished Johnson, by plaintiff.

Another witness for defendant was Dorothy Edgemon who testified that during the time here involved she was employed as Johnson's secretary; that she was acquainted with the arrangement between him and plaintiff relative to the transactions here involved. The court sustained plaintiff's objection to her telling what these arrangements were. Defense counsel then offered to prove that if said witness were permitted, she would testify to the following facts; that as secretary and employee of Johnson during the pertinent period of time, that is, the years 1953 and 1954, she, on numerous occasions contacted Mr. Norman and other employees of plaintiff, inquiring as to moneys due on contracts assigned to plaintiff by Johnson, doing business as Johnson Motor Sales; that she received the information in each of the instances in question and advised Norman, in plaintiff's office, that she was accepting the money from the person involved; that Norman made no objection thereto; that the obligor on the contracts would then give checks for the amounts due on the various automobiles purchased, and that in at least 25 to 33% of such instances payments were made by said obligors to the Johnson Motor Sales Company or to Bill Johnson or William A. Johnson, who are one and the same person; that the checks so received were deposited to said dealer's account and subsequently he would issue checks to plaintiff in most, but not all of the cases, for the full amount

received; that such arrangement obtained for most of the period of time in which she worked for Johnson and especially during the year 1953, and the first six months of the year 1954.

The defendant further offered the evidence of William A. Johnson which he contends constitutes evidence tending to establish his agency to collect money due on conditional sales contracts assigned by him to plaintiff. The court also excluded this evidence upon plaintiff's objection. Counsel then made an offer to prove by testimony from Johnson that the number of conditional sales contracts executed exceeded five hundred; that after their assignment to plaintiff an estimated twenty-five per cent to one-third of the obligors thereof paid the amounts due thereon directly to him in the name either of William A. Johnson, Johnson Motor Company, or Bill Johnson, and the checks were thereafter deposited to his account; that he thereafter paid by his own check the sums so received with written notations thereon showing the names of those who made the payments thus remitted; that he received from defendant the amounts of money specified on each of the checks bearing his name that defendant introduced, or attempted to introduce; that he endorsed these checks and deposited the same to his account, or to his account under the firm name of Johnson Motors Sales, and thereafter made payments to plaintiff. Counsel stated Johnson would further testify as follows: that on September 14, 1953, he received from defendant $152.20, as interest for an extension on the 1953 Ford contract which had been assigned to plaintiff, and, after first telephoning plaintiff's office that he was going to take the money, accepted the payment and thereafter paid said amount to plaintiff on September 22, 1953; that on March 1, 1954, he received from defendant a check for $2,383.40 that was in full payment of defendant's obligation on the 1953 Lincoln contract; that he deposited it to his account or that of Johnson Motor Sales; that thereafter, on March 23, 1954, he paid

plaintiff the sum of $272.92, representing interest paid on extension of the Lincoln obligation up to and including April 21, 1954, to apply on said 1953 Lincoln contract; that in February, 1954, defendant brought him the Cadillac automobile involved in plaintiff's second cause of action and he (Johnson) called plaintiff's Mr. Norman and asked him if it would be all right for him to take the Cadillac to sell in full satisfaction of the 1953 Cadillac sales contract held by plaintiff and signed by defendant; that thereafter he sold the Cadillac; that he communicated the information to plaintiff's agent that the sale proceeds were more than enough to satisfy the obligation due from defendant as to said contract, but that he did not pay plaintiff any part of the sale proceeds and owes the amount due on the Cadillac contract.

■ We think this offered testimony was admissible as evidence tending to establish that Johnson was the authorized agent of plaintiff to collect said payments due on the conditional sales contracts Johnson assigned plaintiff. In Campbell v. John Deere Plow Co., 197 Okl. 403, 172 P.2d 319, 320, we held:

"An implied agency may be established from words or conduct of the parties and the circumstances of the particular case, and, while it is more readily inferable from a series of transactions, it may be inferred from a single transaction."

It appears that in that case John Deere Plow Company brought an action in replevin against John Campbell and N. B. Campbell to recover possession of a tractor and tractor plow. The plow was purchased by J. L. Rogers from Martin J. Mueller, doing business as Mueller Farm Supply Company. Mueller was then engaged in selling farm implements and machinery manufactured by John Deere Plow Company, and the name of John Deere was prominently displayed in a sign on Mueller's place of business. At the time of his purchase of the machinery, Rogers executed a promissory note and conditional sales con-

tract for the purchase price thereof. The note and conditional sales contract were made payable to John Deere Plow Company at its office in Kansas City, Missouri. After the purchase, Rogers paid the first two installments on the note to Mueller who remitted the same to John Deere Plow Company at its office in Kansas City, Missouri. Rogers thereafter sold the machinery to the afore-named Campbells, and paid the balance due thereon to Mueller who failed to remit the payment to the John Deere Plow Company. Said company then brought the replevin action against the Campbells, who plead such payments as a defense and, in support thereof, offered the above mentioned evidence. The trial court held such evidence insufficient to constitute a defense, sustained plaintiff's demurrer thereto, and entered judgment in favor of plaintiff. This court reversed the judgment, and in its opinion said:

"We think that the evidence establishing the above facts, in the absence of any evidence to the contrary except the statement contained in the note and conditional sales contract that payments were to be made to plaintiff at its Kansas City office, was sufficient to require the trial court to submit to the jury under proper instructions the question of whether or not Mueller was the ostensible or implied agent of plaintiff."

The court also held:

"The maker of a note is protected by the good faith payment thereof to an agent of the payee ostensibly, or impliedly authorized to receive payment although the note at the time of such payment is not in possession of such agent."

See, also, Schwartz v. McDaniel, 202 Okl. 324, 213 P.2d 568; Pharaoh & Co. v. Sies, 175 Okl. 614, 55 P.2d 1009; Mackey v. Lefeber, 172 Okl. 99, 45 P.2d 148; Hoffman Bros. v. First Nat. Bank of Quapaw, 159 Okl. 81, 14 P.2d 412.

■ Here, as already described, the record discloses that the conditional sales contracts were made payable either at the office of Johnson, d/b/a Johnson Motor Sales, or at the plaintiff's office. In Mackey v. Lefeber, supra [172 Okl. 99, 45 P.2d 148], we held:

"Where the question of agency is made an issue in a case of equitable cognizance, it becomes a question of fact to be determined by the court; and where a note is payable at payee's office, it is a circumstance tending to show that the payee was the holder's agent to collect."

We think the fact that the conditional sales contracts authorized payment at Johnson's office of the amounts due under the conditional sales contracts constituted a circumstance tending to show Johnson was plaintiff's agent to collect said payments; and was admissible evidence on that point, under the foregoing authorities.

■ From the record and his statements in connection with excluding the evidence offered by the witness Johnson, it appears that the trial judge so ruled on the theory that agency cannot be proved by testimony of the alleged agent. Such theory is erroneous. It is of course well established that agency may not be established by the declarations and conduct of the alleged agent (Wagner v. Davidson, 127 Okl. 199, 260 P. 37; Illinois Bankers Life Ass'n v. Grayson, 125 Okl. 81, 256 P. 894), but, on the other hand, it is also well established that agency may be proved by the testimony of an alleged agent, as to the existence of such agency, and by his proof of the transaction with his principal, in which the agency was created. Munn v. Mid-Continent Motor Securities, 126 Okl. 241, 259 P. 249; Pierce Petroleum Corp. v. Hales, 147 Okl. 42, 294 P. 160.

In accord with the foregoing we hold that the trial court committed prejudicial error in excluding the evidence offered by defendant. The judgment is therefore reversed and remanded for a new trial.

DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.

CORN, V. C. J., dissents.